The undersigned have reviewed the prior Opinion and Award based upon the proceedings before Deputy Commissioner Glenn. The appealing party has shown good ground to reconsider the evidence. The appellee has not shown good ground to receive additional evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as
STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. On the date of plaintiff's alleged injury an employment relationship existed between plaintiff and defendant-employer.
3. Constitution State Service Company was the workers' compensation insurance carrier on the risk.
* * * * * * * * * * *
Based upon all of the competent evidence of record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was thirty-six years old and she had completed high school.
2. Plaintiff began working for defendant-employer as an egg cleaner on 16 November 1984. Plaintiff also worked in several other positions, but the majority of her work involved "tear downs" or "reverse pulling".
3. The "tear down" position required plaintiff to break down over 30 boxes each day. Each box contained 120 eggs. In an eight hour period, plaintiff would handle a minimum of 3,600 items, or 450 per hour and 70 per minute. Plaintiff would have to remove the eggs from the container by reaching and picking them up. She then removed the material that was used to hold the eggs together by placing each egg on a knob and twisting the egg. After removing the wrapper, she would inspect each egg to determine if it had been damaged. If the egg had not been damaged, she would re-wrap it using a twisting motion. Thereafter, using a twisting motion she would place the egg in a container. Plaintiff spent more than 50% of each work day working in the "tear down" position.
4. "Reverse pulling" involved placing eggs into a shipper display case. The display cases held between 25 and 36 eggs each. Plaintiff was required to complete fifteen pallets of shipper display cases each day. Each pallet contained 30 shipper display cases. Thus, plaintiff was required to place at least 11,250 eggs into shipper display cases each day. To complete this task, plaintiff was required to fill shipper display cases at the rate of 100 eggs per minute.
5. Plaintiff also sorted socks. When sorting socks, plaintiff placed a band and bar code of each pair of socks. Plaintiff filled thirty cases of socks each day. Each case of socks contained 16 dozen pairs of socks.
6. After plaintiff began experiencing pain in her hands, wrists and arms, she presented to Dr. McQueen on 19 September 1993. Plaintiff had previously reported her symptoms to defendant-employer.
7. Plaintiff's bilateral hand, wrist and arm pain was caused by bilateral carpal tunnel syndrome. In addition to Dr. McQueen, plaintiff's bilateral carpal tunnel syndrome was treated or evaluated by Drs. Ferre, Brenner and Naso.
8. Plaintiff's bilateral carpal tunnel syndrome was treated conservatively until 27 March 1995, when Dr. Ferre performed a right carpal tunnel release surgery. Dr. Ferre performed a left carpal tunnel release on 26 October 1995.
9. Plaintiff's bilateral carpal tunnel syndrome was caused by her employment with defendant-employer.
10. The parties deposed Drs. McQueen, Ferre, Brenner and Naso. During these depositions, no testimony was elicited as to whether plaintiff's carpal tunnel syndrome was due to causes and conditions that were characteristic of or peculiar to her employment with defendant-employer. Consequently, the evidence of record is insufficient to prove by its greater weight that plaintiff's carpal tunnel syndrome was due to causes and conditions that were characteristic of or peculiar to her employment with defendant-employer.
* * * * * * * * * * *
Based upon foregoing findings of fact and conclusions of law, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Carpal tunnel syndrome is not listed as an occupational disease in N.C. Gen. Stat. § 97-53. Therefore, to establish entitlement to compensation for that condition plaintiff must meet the requirements of N.C. Gen. Stat. § 97-53 (13). That section allows an employee to receive compensation for a disease that is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade or employment, but excluding ordinary diseases of life to the general public is equally exposed. Plaintiff bears the burden of proving each and every element of a claim under N.C. Gen. Stat. § 97-53 (13).
2. Plaintiff did not meet her burden of proving that her carpal tunnel syndrome was due to causes and conditions which are characteristic of and peculiar to her particular trade or employment.
3. Plaintiff is entitled to no compensation under the North Carolina Workers' Compensation Act.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs, except that defendants shall pay expert witness fees of $200.00, $200.00, $250.00 and $290.00 to Drs. Naso, Ferre, McQueen and Brenner, respectively.
 S/ _____________ JOHN A. HEDRICK DEPUTY COMMISSIONER
CONCURRING:
S/ _____________ LAURA K. MAVRETIC COMMISSIONER
S/ _____________ THERESA STEPHENSON DEPUTY COMMISSIONER
JAH